ROBERT T. GRAY, Plaintiff-Appellant, *v.* PETER H. HALL *et al.*, Defendants-Appellees.

(No. 56623;

First District (2nd Division)—March 20, 1973.

Donald L. Johnson, of Chicago, and Errol Zavett, of Evanston, for appellant.

Joseph D. Gannon, of Chicago, and Nadelhoffer, Hennessy & Dommermuth, of Naperville, for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Plaintiff, one of two shareholders in P. E. Product Engineering Corporation (the Corporation), instituted this suit against the Corporation and its principal shareholder, Hall, seeking an accounting. Before the case came to trial the Attorney General of Illinois instituted an action against the Corporation, seeking an involuntary dissolution for failure to file its annual report. The Attorney General was successful and on December 22, 1969, a decree was entered ordering dissolution of the Corporation. Plaintiff's complaint was later amended, seeking not only an accounting but also liquidation of the corporate assets and distribution of the proceeds to the shareholders. After a trial by the court it was ordered that upon liquidation of the Corporation the plaintiff was to receive assets representing his fractional share of the common stock. All other relief was denied, and plaintiff appealed to this court. He charges that

    (1) the trial court erred in failing to order a liquidation and distribution of the assets of a dissolved corporation;

    (2) the trial court erred in failing to liquidate the corporation under its powers granted pursuant to Ill. Rev. Stat. 1971, ch. 32, par. 157.86; and

    (3) the trial court erred in allowing Hall to benefit from a breach of a shareholders' agreement, and that certain findings

of fact made by the trial court were contrary to the manifest weight of the evidence.

No question is raised by the parties as to the appellate jurisdiction of this court to decide questions which could cause the termination of a corporate franchise. Jurisdiction over such questions, as well as questions involving freeholds, formerly vested solely with the Supreme Court. (*Central Standard Life Insurance Co. v. Davis*, 7 Ill. 2d 266). Changes in our Civil Practice Act and Supreme Court Rules make it clear that such questions are, however, now properly brought before the appellate court. The facts follow.

In 1960 the Corporation was formed by Gray, Hall, and one Edwin Townsend. There is dispute as to the relative capital contributions made by Townsend and Hall, but it appears that Gray contributed $6,000 to the venture. Each of the incorporators received 120 shares of stock, and these 360 shares were the only stock ever issued. The Corporation commenced doing business in the field of 4-way refrigeration valves. It was agreed that Townsend would attend to the design, Hall would concern himself with the manufacturing, and Gray with the sales of the product. It was further agreed, in writing, that so long as the three were the only shareholders, the sale of stock by any one of them would be permissible only if the others had sufficient notice of the proposed sale and the opportunity to purchase at the highest offer.

As the Corporation progressed, Townsend and Hall worked full time and drew salaries, while Gray continued in his previous occupation as a manufacturer's representative and took no salary from the Corporation. Gray made some limited sales trips and established a sales network for the Corporation. However, he occupied substantial quarters in the building rented by the Corporation, and made free use of its secretary and storage facilities. During this time he was in daily communication with Hall and Townsend.

There is disagreement as to the amount of commission Gray was to receive, but it is admitted that he was to be paid a 10% commission on valve sales after the Corporation "got off the ground."

A few months after the business was started Townsend and Hall formed an engineering project partnership which they called EMCO. In 1961 and 1962 EMCO provided up to 90% of the Corporation's revenue-producing business. In 1962, due to personality conflicts between Townsend and Hall, EMCO was dissolved, and Townsend took over its machinery, business, and name, with Hall taking Townsend's interest in the Corporation.

Gray apparently knew of the transfer since EMCO and the Corporation were in the same building and had the same principals; and the

transaction between Townsend and Hall was reported in a Dun and Bradstreet publication. At this time 120 shares of stock in the Corporation were worth approximately $2,000.

Subsequently, the sales of the Corporation increased each year from $14,870.27 in 1962 to $305,607.12 in 1970. The earnings, however, fluctuated from a profit high in 1966 of $13,846.13 to a loss in 1969 of $19,764.74. From 1963 to 1970, Hall's salary increased from $5,208 to $12,000. Plaintiff contends that these increases were a result of the unilateral acts of Hall. On the other hand, plaintiff admits that Hall worked 70 hours a week for the Corporation.

In March 1967, after disagreements with Hall, Gray moved from the premises. In October, Gray's attorney served Hall with a demand for permission to inspect the corporate books and records, pursuant to Ill. Rev. Stat. 1971, ch. 32, par. 157.45. In May of 1968, notice was served on plaintiff that a shareholders and directors meeting would be held on May 29, the first of such meetings since the incorporation in 1960. There is dispute as to what transpired at the meeting. The corporate minutes indicate that there was a discussion of an intention by Hall to move the headquarters to North Carolina. Plaintiff contends that these records do not accurately represent the occurrences of that date and that little was said about an intention to move the corporate headquarters. The meeting was adjourned in order that Gray and his attorney could examine the corporate books; however, the examination could not be completed since some of the books were at the office of the accountant. Soon after this meeting the plant was moved to Asheville, North Carolina, and this suit was commenced shortly thereafter.

■■ Plaintiff's first contention is that the trial court erred in failing to liquidate the assets of the Corporation after it had been dissolved in the non-related action brought by the Attorney General of Illinois. On appeal, the parties agree that the decree of dissolution previously entered was vacated on motion of the Attorney General on September 3, 1971. Plaintiff acknowledges the vacating of the decree of dissolution, but contends that this court cannot take cognizance of such event, since it occurred after the judgment from which the appeal was brought. However, it would seem illogical to cause the liquidation of a corporation based upon a decree of dissolution where it is agreed by all parties that the decree has been vacated.

Plaintiff next contends that even if there were no decree of dissolution, the trial court erred in failing to liquidate the assets of the Corporation pursuant to its powers under Ill. Rev. Stat. 1971, ch. 32, par. 157.86(a)(3), which provides in pertinent part:

"Circuit courts have full power to liquidate the assets and business of a corporation:

(a) In an action by a shareholder when it appears:

* * *

(3) That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; * * *."

Plaintiff lists nine specific acts of the defendants which he alleges constitute oppressive action within the meaning of the statute. In *Central Standard Insurance Co. v. Davis,* 10 Ill.2d 566, the Supreme Court stated at page 573:

"The word 'oppressive' does not carry an essential inference of imminent disaster; it can, we think, contemplate a continuing course of conduct. * * * [W]e reject defendants' argument that the word is substantially synonymous with 'illegal' and 'fraudulent.' Misapplication of assets or mismanagement of funds are not, as we read the statute, indispensable ingredients of 'oppressive' conduct."

■■■ As we read this definition, actions which might be oppressive under one set of circumstances would not be oppressive under others. For instance, the paying of large salaries to corporate officers might be justified where a corporation has large retained earnings. This same behavior might be oppressive where the corporation is unable to pay dividends to minority stockholders, due to large salaries drawn by officer-majority stockholders. Similarly, the non-payment of dividends might indicate oppressive behavior where the corporation retains large amounts of earnings for no apparent reason except to "freeze out" minority stockholders. The non-payment of dividends by a corporation cannot be determined to be oppressive except when viewed in the backdrop of the corporation's overall financial picture. In this case, to obtain a view of the overall picture is impossible without a thorough and complete accounting of the Corporation's books. In our opinion, the plaintiff is entitled to such an accounting, and the case should be remanded for that purpose.

■■ Plaintiff further contends that the trial court erred in allowing defendant Hall to benefit from his knowing breach of the stockholders agreement when he bought Townsend's stock. However, our examination of the record discloses that plaintiff knew of the transfer and acquiesced in it until the commencement of this action eight years later. Plaintiff does not specify what remedy he would have this court grant in respect to this contention. The inference is that plaintiff desires a rescission of the transfer between Townsend and Hall, with that block of stock being divided equally between plaintiff and defendant Hall. Such equitable

relief is not proper under these circumstances, where plaintiff knew of the breach and acquiesced in it until such time as it became financially desirable for him not to do so.

██ Plaintiff further contends that the trial court's findings relative to his claim for commissions were contrary to the manifest weight of the evidence. The trial court's ruling on this issue was based on the evidence, and we find no error in the court's ruling.

The case is remanded with directions to the trial court to order a complete accounting of the books and records of the corporate defendant and to grant plaintiff such relief, if any, as may be deemed appropriate.

Affirmed in part, reversed in part, and remanded for such other and further proceedings as are not inconsistent with the views herein set forth.

STAMOS, P. J., and HAYES, J., concur.