ALPHONSE CARDINAL, Plaintiff-Appellee, v. E. L. TRENDEL, Defendant-Appellant.

E. L. TRENDEL, Third-Party Plaintiff-Appellant, v. SAM CARAVELLO, Third-Party Defendant-Appellee.

(No. 56685;

First District (1st Division)—July 2, 1973.

Herrick, McNeill, McElroy & Peregrine, of Chicago, (Ray W. Fick, Jr., and Michael J. Hamblet, of counsel,) for appellant E. L. Trendel.

Samuel A. Maremont, of Chicago, (Morris Solomon, of counsel,) for appellee Alphonse Cardinal.

Wexler and Wexler, of Chicago, for appellee Sam Caravello.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Cardinal, filed a complaint in the First Municipal District of the circuit court against the defendant E. L. Trendel, alleging that

the defendant accepted the sum of $5000 from the plaintiff and executed a receipt by the terms of which the defendant accepted the money as a deposit on the purchase of certain real estate; and that the defendant failed to convey the real estate and failed to return the money. The complaint, which is on a Municipal District form used in contract actions, does not expressly allege that Trendel agreed to do anything. The defendant answered and filed a third-party complaint against Sam Caravello alleging that he took the $5000 from the plaintiff at the request of Caravello and forwarded it to an escrow pursuant to the instructions of Caravello; that the title to the property was taken in the name of the other parties named by Caravello; that Cardinal's failure to acquire title was due to the fraud of Caravello; and that, if Trendel was liable to Cardinal, he should have a judgment against Caravello. Caravello answered that the money received by Trendel was advanced by Cardinal as a loan to Caravello to purchase the lot; that the plaintiff had confessed judgment against Caravello; and that the $5000 advanced was included in the judgment itself. After a bench trial, judgment was entered for the plaintiff, Cardinal, on the original complaint and for the counter-defendant, Caravello, on the third-party complaint. The defendant, Trendel, appeals from both judgments and contends that the evidence does not support either judgment and that the court erred in refusing admission in evidence of an exhibit.

Cardinal had purchased his home from Caravello in 1958, and in 1965 Cardinal recommended Caravello as a homebuilder to his daughter, who informed him that Caravello "had his back against the wall." Cardinal testified that he loaned Caravello a total of $22,000. Three notes given by Caravello to Cardinal dated July 1 and July 11 of 1966, and July 20, 1967, totaling $33,300 were introduced into evidence. Caravello called Cardinal and told him that he could get a good return on an investment in a lot. Cardinal went with Caravello and looked at lot 17 and told him he was "interested."

Trendel was president of a building development company which also sold real estate. The company owned 105 lots, one of which is lot 17, comprising Cedar Glen subdivision in Arlington Heights. In 1963, he entered into a contract to sell all of the lots to McKay-Nealis Builders, Inc. McKay-Nealis forfeited and was allowed to rescind except as to certain lots, including lot 17, the title to which McKay-Nealis had already acquired. Trendel then entered into a contract with Caravello, who was president of B & G Builders, for the purchase of the forfeited residential lots which had not already been conveyed to McKay-Nealis. Caravello subsequently forfeited but was allowed to continue working on the lots upon which construction had begun. In 1966, he came to Trendel

periodically, requesting conveyance of individual lots for which he had a buyer. In the spring, Caravello called Trendel and told him he had a buyer for lot 17 but did not mention his name. After learning from McKay-Nealis' attorney that the purchase price was $6000, he so informed Caravello. On July 7, 1966, Caravello and Cardinal came to Trendel's office. At that meeting, Trendel received a $5000 check made out by Cardinal and gave him, pursuant to Caravello's direction, a signed receipt which reads as follows:

"Received of Mr. Alphonse Cardinal $5,000.00 as deposit on lot 17 in Block 5, Cedar Glen Subdivision. One Thousand Dollars to be paid upon closing.

E. L. TRENDEL"

At the time he showed Cardinal the lot, Caravello had a contract to build a home on that lot with Leonard and Ann Schinkoeth. He testified that he did not remember if he told Cardinal that he was building on the lot for the Schinkoeths. Trendel sent the check to his attorney and told him to hold it until he learned what "they" wanted. About a month after the meeting, Caravello called Trendel and told him that he had begun building on the lot and wanted the deed to be made out to the Schinkoeths. Trendel then advised his attorneys, who deposited the $5000 check and a quitclaim deed from Trendel's company in the title escrow. Caravello was present at the closing, and McKay-Nealis conveyed to the Schinkoeths. Trendel got none of the proceeds of the sale. Caravello testified that he was paid for both the house and lot under the contract but that he did not pay Cardinal the $5000 he "advanced." Cardinal testified he was putting up the money as an investment but that there were no definite terms agreed upon by him and Caravello.

In the early part of 1967, Cardinal asked Caravello if anything had been built on the lot, and Caravello told him he didn't know anything about it. Since he did not believe Caravello, he went to the lot and saw an occupied residence on it. Neither Caravello nor Trendel ever asked him for the $1000 to complete the transaction.

On March 14, 1968, Cardinal confessed judgment in the County Law Division on the notes of Caravello in the sum of $35,047.50. That judgment was vacated, and on March 31, 1971, judgment was entered in the amount of $22,025. This suit was also filed on March 14, 1968, in the First Municipal District.

A letter dated May 2, 1968, was sent by the attorneys for Cardinal to the attorneys for Caravello which reads as follows:

"Dear Mr. Wexler:

I have had the Cardinals in my office yesterday and gone over their account with Caravello. After allowing the Cara-

vello credit for the $12,000.00 note, the account stands as follows:

| 7-11-66 | Note | $11,300.00 |
| 7-20-66 | Note | 10,000.00 |
| 9-23-66 | Check—cash | 2,000.00 |
| 7- 7-66 | *Check to Trendel* | 5,000.00 |
| | | 28,300.00 |

Credit

| 2- 4-67 | Cash | $ 500.00 |
| Rent 5 mos. at $140.00 | | 725.00 |
| 2- 3-68 | Check | 50.00 |
| | | 1,275.00 |
| | | $27,025.00 |

I am willing to stipulate to a reduction in the amount of the judgment on condition that you furnish us with a good second mortgage for the $12,000.00 note and a satisfactory arrangement for the liquidation of this judgment.

Mr. Caravello mentioned when he was at your office that *the $5,000.00 given to Mr. Trendel was the same $5,000.00 given to Mr. Caravello for the $11,300.00 note.* That is not true. I have copies of both checks which I will be happy to show you.

To the amount of $27,025.00 must be added court costs and attorney's fees.

Please call me when you have discussed this matter with Caravello and we can then work out the mechanics.

Very truly yours,
/S/ SAMUEL A. MAREMONT
SAMUEL A. MAREMONT"

(Emphasis added.)

The defendant offered this letter as an admission showing that Cardinal considered the $5000 as a debt owed him by Caravello. An objection to its admission was sustained on the ground that it was hearsay. That ruling is assigned as error.

The heart of the matter is what constitutes the contract between Trendel and Cardinal. The terms are not clear from the complaint filed. However, Cardinal testified: "I gave the check to Trendel. * * * [f]or the lot I bought." We conclude, therefore, that the contract sued upon required Trendel to convey, or to have someone else convey, lot 17 to Cardinal. Whether the evidence supports a finding that Trendel so agreed requires a detailed exposition of what transpired at the meeting of July 7. Cardinal testified that, after he had first seen the lot and then Trendel, he left to get the $5000 for the down payment. He returned the next day with Caravello. The following occurred during direct examination:

> Q. Did you have a conversation with him, at that time?
> A. Sam Caravello introduced us.
>
>     * * *
>
> The Court: * * * Answer the question, did you have a conversation with Mr. Trendel?
> Cardinal: No, I don't have conversation.
> The Court: We cannot hear what it was.
> Q. The question is, did you talk to Mr. Trendel?
> The Witness: Before the deal?
> Mr. Solomon: Yes.
> The Witness: Yes, I did talk to him before the deal.
> Mr. Solomon: That is all. * * *

Caravello testified that Trendel told him in Cardinal's presence that he could get the lot. Whether that statement was made at the first or second meeting is not clear.

Trendel testified that Caravello came with Cardinal into his office without an appointment and told him that "Cardinal was going to put up the money so he could build a house for another man" and that Cardinal said nothing. Trendel also testified that Caravello told him that Cardinal wanted a receipt for the check. Neither Cardinal nor Caravello ever rebutted this testimony of Trendel.

■■ Needless to say, the burden of proving the terms of the contract rests upon the plaintiff. (*Continental Illinois National Bank v. National Casket Co.*, 27 Ill.App.2d 447, 454, 169 N.E.2d 853.) This evidence, we conclude, is devoid of any proof to support a finding that Trendel promised to convey, or to have anyone else convey, title to lot 17 to Cardinal. The admitted and unrebutted evidence leads to no other conclusion but that Trendel in accepting the check and giving a receipt was acting as a conduit for the funds for Caravello with the knowledge and acquiescence of Cardinal.

The plaintiff's reliance upon *Grebe v. Vacek and Co., Inc.*, 103 Ill.App.

2d 79, 243 N.E.2d 438, is misplaced. In *Grebe*, the plaintiff, the only witness, testified that one Rusin told her that the defendant was the owner of the building and that he, Rusin, was a broker for the defendant, who did in fact own the building. The plaintiff drew a $5000 check payable to the defendant, *which was cashed by the defendant.* The court held that the evidence could support a finding that Rusin was in fact the agent of the defendant or that the defendant had ratified his action. By no stretch of the evidence in this case could a similar finding that Caravello was Trendel's agent be upheld. Other distinctions between this case and *Grebe* are that Trendel did not own the property and, most important, did not receive any money.

In light of the position we take on the original complaint, we need not pass on the court's ruling on the admissibility of the exhibit or the correctness of the judgment against the third-party plaintiff.

The judgment of the circuit court in favor of the plaintiff and against the defendant is reversed and the cause is remanded with directions to enter judgment for the defendant and against the plaintiff.

Judgment reversed and remanded with directions.

BURKE, P. J., and GOLDBERG, J., concur.