RICHARD A. LIPPMAN, Plaintiff-Appellant, *v.* WALLY HARRELL, Defendant-Appellee.

Fourth District No. 12745

Opinion filed June 17, 1976.

BARRY, J., dissenting.

Hagin Harper, of Champaign, for appellant.

Richard J. Watson, of Champaign, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Richard A. Lippman appeals from a judgment of the Circuit County of Champaign County (following a bench trial) in favor of defendant Wally Harrell, in an action to recover damages assertedly caused by defendant's alleged breach of contract.

From the record it appears that defendant Harrell sold plaintiff Lippman a trailer in October 1968, for $5,000 and gave Lippman the right to keep the trailer on defendant's premises (a trailer park and fishing lake) without payment of rent until March 1971.

At the trial plaintiff testified that he entered into the agreement with defendant orally, in addition to the written sale agreement, by the

terms of which he was to be permitted to keep the trailer in its present location at the place called Kaufman's Lake, located about a mile outside the city limits of Champaign, Illinois. Plaintiff testified that plaintiff and his wife moved into the trailer on about the second week of October. No difficulty arose until the following April when defendant summoned the plaintiff to his office. Defendant was upset because on the previous evening plaintiff had called the sheriff. Plaintiff said that he called the sheriff because a bonfire had been started about one foot from his carport by some young people and that they were making a lot of noise.

A few weeks later, on May 12, 1969, plaintiff stated he received a letter from defendant, which was offered and admitted as an exhibit, which informed plaintiff that he had 30 days to move and to remove his mobile home and equipment, or else he would be trespassing and charged with the same. The letter listed a number of provisions that the plaintiff had allegedly not complied with. Plaintiff attempted to find another place to park his trailer but was unsuccessful because of the size of the trailer or its age.

On June 24, 1969, plaintiff's water supply was cut off. The plaintiff asked defendant to turn it back on, but this was never done. Plaintiff stated that the agreement required that he pay for the utilities and that the defendant would provide the water without charge. He stated that so far as he knew, other water was not available. He stated that he moved out of the trailer the day after the water was turned off. Plaintiff testified that he and his wife found accommodations which cost the couple $140 a month. Plaintiff also denied that he had agreed to the following conditions which defendant asserted he had agreed to, that is, to obtain liability insurance; to keep the grounds clean; and to find another source of water by spring. Plaintiff also testified that defendant had never claimed that plaintiff drove too fast while on the premises or that plaintiff was a nuisance, other than the time he called the sheriff. Plaintiff also asserted that the neighbors also used the defendant's mail box and that he never destroyed one of defendant's signs.

Plaintiff admitted that when he first moved into the trailer, a tank provided the gas but that subsequently he asked Illinois Power Company to put their line to his trailer. When he was asked if he could not also have the trailer connected to a water line along Springfield Avenue, from which the gas line came, plaintiff stated that so far as he knew there was no water. He finally admitted he never investigated the cost. He also admitted that he permitted his second car to sit on defendant's property, but he kept it off the main road.

Defendant testified that he operated a fishing lake. At the time the contract was entered into, he stated that plaintiff agreed to keep the place clean and pay for his own utilities. Defendant told the plaintiff that he

needed all the water he had for his own use and that he needed it to run his concession in the summer. He told the plaintiff he could use the water until spring, but that he would then have to get his own water. He also stated that plaintiff was to get liability insurance and plaintiff had no permission to use any other part of the premises, other than where the trailer was parked. He also testified that the children who started the bonfire near plaintiff's trailer, and as to whom the plaintiff had called the sheriff, were paying customers, and their parents would no longer let them come back to the lake after the incident. Plaintiff never furnished an insurance policy and also permitted his area to be grown up in weeds 3½ to 4 feet high, he stated. He also stated that plaintiff had caused a large sign to be knocked down and that he left his old car parked on the road. He testified, also, that another source of water was available just as the gas was. He also stated that there were other trailer spaces available only a few blocks from where the trailer was located. Defendant said that he permitted plaintiff to use the water for the period he had agreed to, but turned it off as to plaintiff because he needed it and that this was done pursuant to his agreement with the plaintiff.

Defendant also stated that he agreed that the trailer could be kept on the property without rent because he wanted someone to live on the lake during the winter. The rental space was not included in the purchase price. In plaintiff's complaint, plaintiff alleges that defendant had breached the agreement by serving the notice upon him to remove the trailer and by shutting off his water supply. He asked for $10,000 in damages because his trailer has been rendered uninhabitable and that he has incurred and will in the future incur living costs by reason of this asserted breach of contract. Defendant replied in his answer that he did not enter into such agreement with plaintiff but he was forced to order plaintiff to vacate the premises because plaintiff cluttered up the premises and blocked access to other parts of defendant's property and interfered with the business and harassed and annoyed his customers.

The trial court found in favor of defendant and, in a written memorandum filed at the time, the trial judge stated because of the parol evidence rule, the court did not need to consider the oral agreements even though the evidence was not objected to at the time of its introduction. The court found that even if the parol evidence were considered, there would be no preponderance of the evidence as to which party to believe and that therefore it was necessary to find in favor of defendant. The trial court also stated the mere notice to quit did not constitute a constructive eviction of defendant.

We believe that the oral understanding as between the parties was pertinent and that the trial court should have allowed and considered such evidence. However, the trial court also stated that even if he did consider

such evidence he could not find in favor of plaintiff. We agree with this conclusion. The written contract was incomplete in the areas of discussion but the testimony of the plaintiff and defendant were exactly in conflict and the determination of the trial court on this conflicting question of fact would be adhered to, since it is not contrary to the manifest weight of the evidence.

■■ The failure to provide water to a tenant could, under some circumstances, constitute a constructive eviction. (*Allmon v. Davis* (1928), 248 Ill. App. 350.) Plaintiff, however, was required first to establish that the defendant was obligated to supply the water. (*Slaughter v. Johnson* (1906), 128 Ill. App. 417.) Defendant testified that he only agreed to supply the water until spring. The burden of proving that his contention was a term of contract, rested on the plaintiff. (*Continental Illinois National Bank v. National Casket Co.* (1960), 27 Ill. App. 2d 447, 169 N.E.2d 853.) The trial judge stated that if he were to consider all the oral testimony, which was not objected to, there would be no preponderance as to which party to believe. Since the burden was on the plaintiff to prove by a preponderance of the evidence that the defendant promised to provide water for the duration of the occupancy, the trial court properly found in favor of defendant on this issue.

■■ The second issue raised was that the letter sent to plaintiff by defendant telling him he had 30 days to get out or he would be charged with trespassing constituted a constructive eviction. Even if the view was taken that the notice to quit constituted constructive eviction, which was questionable under the facts, plaintiff's position could not be sustained since a tenant must surrender possession or abandon the premises before there could be a constructive eviction. Since plaintiff in his case continued to occupy the premises, at least for a period of two weeks, it is considered a waiver to the right of abandon. (*Gillette v. Anderson* (1972), 4 Ill. App. 3d 838, 282 N.E.2d 149.) In the instant case, defendant agreed that plaintiff could leave his newly purchased trailer on defendant's property for three years without paying rent. When plaintiff moved out he did not take his trailer. He removed the air conditioner and kept it out of the trailer for awhile but later reinstalled it in the trailer. Even though plaintiff personally abandoned the premises he was still getting the benefit of the contract, since his trailer still remained on the premises. Plaintiff, therefore, had not surrendered possession and there has been no constructive eviction.

We have given only passing attention to the question as to whether a mere notice to quit is equivalent to constructive eviction. As stated in 49 Am. Jur. 2d *Landlord and Tenant* §305 (1970):

> "Even though there is some authority to the contrary, the generally prevailing view seems to be that a mere notice to the

tenant to quit, * * * is not of itself sufficient to constitute an eviction and give the tenant a right to damages * * *."

In Illinois, for an act to constitute a constructive eviction, it is "necessary that the landlord do some act that disturbs the tenant's possession, or which amounts to a clear indication on the part of the landlord to deprive the tenant the enjoyment of the premises as demised to him to constitute an eviction." (*Smith v. Bellrose* (1916), 200 Ill. App. 368, 375.) Defendant did not remove plaintiff physically from the premises in the instant case. We must also conclude that the threat of defendant to institute criminal proceedings as against plaintiff had no legal basis in fact, and did not constitute a constructive eviction and entitle plaintiff to damages.

On review of the evidence as a whole, the constructive eviction issue as resulting from the notice to quit, is really not relevant under the facts, since the plaintiff did not treat the notice as such but remained on the premises for two weeks past the so-called quitting date. Even if the eviction were found, it is not clear that any damages would be owing to plaintiff. Plaintiff still owns the trailer, even if it remains on defendant's land. As we have also indicated, plaintiff did not sustain the burden of showing that defendant had agreed to furnish water past the shut-off date.

For the reasons stated, therefore, the judgment of the Circuit Court of Champaign County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, dissenting:

In my view the judgment of the circuit court is contrary to the manifest weight of the evidence and to the law principally because of the misapplication of the parol evidence rule. Properly applied that rule makes it apparent as to which of the conflicting versions of the testimony must be accepted.

In the construction of an integrated written contract, the parol evidence rule requires only the exclusion of extrinsic proof which adds to, modifies, or alters the *substantive obligations* expressed or implicit in the meaning of the language used. (30 Am. Jur. 2d 1967 *Evidence* §1016, at 151 *et seq.* (1967).) It does not authorize the exclusion of extrinsic proof of circumstance attending the agreement by which the court can place itself in the situation occupied by the parties when the agreement was made, and thereby avail itself of the same knowledge the parties possessed so as to judge the correct application of the language to the things described.

(17 Am. Jur. 2d *Contracts* §272 (1964).) The importance of considering such extrinsic proof is more apparent where the language is ambiguous, but no proof should be considered even in that circumstance which would import any meaning of which the language used is plainly not susceptible. (17 Am. Jur. 2d *Contracts* §272 (1964).) (The agreement appears below.[1]

The handwritten agreement here evidences not only a sale of a "house trailer" but also of a cabana and carport for a total sum of $5000 which was paid. It recites the further understanding of the parties that the "trailer" may be left on location at no parking charge for a period expiring March 1, 1971. Nothing is said about a right to park the cabana or carport which plaintiff also bought. Finally, the writing contains a curious and ambiguous recitation that "This unit may be sold *if agreed by both parties*." (Emphasis added.) It is ambiguous because it is not clear whether word "unit" refers to the trailer only, or to all the "chattels" plaintiff bought and paid for. It is curious in the sense that it imposes a restraint on plaintiff's right of alienation as to items he purchased—a restraint which from all appearances, would follow the "chattels" even if plaintiff were to have removed them from location pursuant to defendant's notice to quit.[2]

Considering the record with the foregoing understanding of the parol evidence rule, it becomes plain that plaintiff's testimony does not purport to add, modify or alter the written agreement in any respect whatever. It sheds light as to attending circumstances, eliminates ambiguity, and brings the meaning of the written words into clear focus. The cabana and

---

[1]
"Kaufman's Clear Lake
2500 West Springfield
Champaign, Illinois
61820

Agreement                                                    Oct. 1-1968

Sold to Richard Lippman & Araceli Lippman—a 1957—10 Y 45 Travelo House Trailer with Cabana & Carport for a total of $5,000 on or before Oct. 15th 1968. $1,000 on Oct. 4th        $4,000 by Oct. 15th
It is understood by all Parties that the above Trailer may be left at the same location until March 1st 1971 at no parking charge. This unit may be sold if agreed by both Parties.

Richard A. Lippman                                    Wally Harrell"

[2] The record contains some proof that plaintiff's purchase of the cabana, carport and trailer was privately financed by him at a local bank, and that having been disposed of all or part of the items he was paying for, through defendant's interference, he became in default, that the bank then repossessed and resold. There is some indication that defendant was the purchaser.

carport, although attached to the trailer, were also affixed to the realty and were not moveables as one might have wrongly supposed. Plaintiff was a New York resident attending the University of Illinois, and was purchasing "the unit" for temporary housing. Before signing the agreement, he was shown the premises by defendant and observed it was served by electricity on a separate meter, by bottled gas, and by water supplied from defendant's well. He assumed from this inspection, that the electricity and gas expenses were his, and paid them; later he altered the gas supply by making, at his expense and with defendant's acquiescence, a connection to the city main. Both parties agree it was intended that plaintiff should live there and considering the ordinary usages of the property purchased, such right may be fairly implied from the writing itself. Plaintiff denied that there were *any oral agreements* about water, utilities, insurance, weeds, or anything else that was not in the writing. With this evidence, it is legally and reasonably inferable from the written contract, that the parties intended that the trailer, cabana and carport would never be moved at all, that plaintiff was to have the right of occupancy without ground rents until March 1, 1971, and could then, at the conclusion of his schooling perhaps, or before, resell the facility, *if defendant would approve the new occupant.* Such a housing arrangement could reduce plaintiff's schooling expense. The restraint in alienation acquires meaning under this construction. Defendant would have a legitimate interest in who the new buyers, dwelling on his land, might be, and might expect to require ground rents. This construction also supports the conclusion that plaintiff acquired a right expiring not sooner than March 1, 1971, to an existing, visible water supply from defendant's well, and that defendant's water shut-off was, indeed, actionable.

An examination of defendant's testimony against the same understanding of the parol evidence rule reveals that most of it must be excluded from consideration. It does not shed light on the meaning of the written words, but requires acceptance of the proposition that there were many additional oral covenants undertaken besides those in the writing which he admits to be in his own hand. The fact alone requires that doubtful issues should be construed against him. Nonetheless, he asserts the existence of contemporaneous oral covenants for liability insurance, for maintenance, and that plaintiff promised to find an alternative water supply by spring, or April. It is for violation of these covenants, none of which are in his writing, even by implication, that he asserts plaintiff came in breach. It is not wholly insignificant that the oral covenants described in his later written notice to quit, given under date of May 12, states nothing even then about plaintiff's duty to find an alternative water supply. And the notice to quit does not purport to be a release of the restraint on

plaintiff's alienation of the "chattels"; with that restraint, anything that might have been moveable was of doubtful value.

I would reverse the judgment of the circuit court, enter judgment for plaintiff and remand the cause for further determination of damages.