JAFFE COMMERCIAL FINANCE COMPANY, Plaintiff-Appellant, *v.* PAUL P. HARRIS *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 82—2334

Opinion filed November 1, 1983.

Roger B. Harris and Judy B. Ludwig, both of Altheimer & Gray, of Chicago, for appellant.

Glenn A. Schwartz and Mavis Hamilton, both of Landesman & Schwartz, of Chicago, for appellees.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

The issue in this case is whether a minority shareholder in a close corporation is entitled to any relief from an alleged freeze-out. Plaintiff, Jaffe Commercial Finance Company,[1] contests the propriety of the trial court's judgment holding that: (1) plaintiff was barred from equitable relief under the "unclean hands" doctrine; (2) the evidence failed to show a pattern of practice and an oral agreement between plaintiff's principal shareholder, Joel Salk, and the individually named defendants, Paul and Ruben Harris (the Harris brothers), regarding their participation in and earnings from the defendant corporation, Harris Loan and Mortgage Corp. (Harris Loan); and (3) the evidence failed to establish a breach of fiduciary duty, or oppressive conduct, sufficient to warrant liquidation of the assets and business of Harris Loan. Plaintiff contends that these findings were contrary to the manifest weight of the evidence.

In the spring of 1972, the Harris brothers decided to incorporate Harris Loan, a retail installment loan business. They met with Joel Salk to discuss the formation aspects of this new venture, for Salk had acquaintances in the banking community who would operate as a beneficial source for lines of credit essential to the loan business; moreover, Salk had invaluable experience with regard to management systems, internal controls and other operational aspects of the con-

---

[1]Plaintiff corporation is a minority shareholder of the defendant corporation, and is engaged in the business of retail installment receivables. Joel Salk is the president and principal shareholder of plaintiff, and has acted on behalf of it with respect to all matters pertinent to this cause of action.

sumer finance industry.

On June 2, 1972, Harris Loan was incorporated with an initial capitalization of $100,000. Salk and the Harris brothers each invested $30,000 in this new business venture ($7,500 in common stock and $22,500 in subordinated debentures). A third Harris brother, Joel Harris, originally invested $10,000 ($2,500 in common stock and $7,500 in subordinated debentures); however, his interest was redeemed at an early stage because of his failure to assist in the arrangement for additional bank lines of credit.

At the formation of Harris Loan, it was agreed that Paul Harris would be president, and Ruben Harris would be vice-president and treasurer, and Joel Salk would be secretary. Thereupon, each was elected to his agreed-upon corporate office; each became a director of the Harris Loan Board; and, each was reelected annually from 1972 to 1978, when the events took place which culminated in this lawsuit. In addition, it was agreed that the Harris brothers were to conduct the day-to-day operations of the business on a full-time basis. Salk was to advise and consult as an outside director, set up administrative and accounting systems, and arrange for the procurement of bank lines of credit. As for compensation, it was determined that each of the Harris brothers was to receive a salary of $25,000 for the first year. There was no discussion with regard to dividends.

In 1977, negotiations took place for the purchase of the River Oaks Bank and Trust Company. Contracts of purchase for the bank's stock were signed by Salk and the Harris brothers; however, a disagreement arose with respect to the proposed merger of plaintiff corporation and Harris Loan, harsh words were exchanged, and the Harris brothers were subsequently released from the bank acquisition. Salk then proceeded with the bank purchase, and informed the Harris brothers that he wished to sell plaintiff's shares in Harris Loan. The Harris brothers, referring to a 1972 "buy/sell" agreement, offered to buy out plaintiff's equity at $35,000, a price equal to the 1977 book value of the shares. However, Salk declined the offer, refusing to give up the stock for a price less than the alleged fair market value of approximately $300,000.

In an attempt to persuade the Harris brothers to buy plaintiff out at the fair market price, Salk informed them that the institution of a lawsuit would have a chilling effect on their bank lines of credit. As a result, the Harris brothers terminated further consulting services on the part of Salk; and, at a special meeting of Harris Loan shareholders on May 30, 1978, they voted him out as a corporate director. Leah Harris, the wife of one of the Harris brothers, was subsequently

elected to replace Salk on the Harris Loan Board; and, on June 26, 1978, Ruben Harris was elected to the office of corporate secretary, thereby effectively ousting Salk from participation in the business of Harris Loan.

Five days prior to the June 26 Harris Loan Board meeting, plaintiff filed an action in equity to enforce an alleged agreement between the Harris brothers and Salk. Plaintiff averred that the three men agreed, at the formation of Harris Loan in 1972, to share equally the rights and responsibilities of ownership and management of Harris Loan; to each occupy, at all times, a seat on its board of directors; to invest approximately equal sums in its common stock, and much larger, but still approximately equal, sums in the subordinated debentures of Harris Loan; and, to receive equal returns on their investments, subject to the rights of the Harris brothers to receive reasonable compensation for their active management of the business. There were also allegations of a further agreement between the parties that Salk would be readily available for consultation, and that he would occupy, at all times, the office of secretary to Harris Loan.

Initially, plaintiff sought a preliminary injunction; however, on March 21, 1980, plaintiff was granted leave to file an amended complaint, which asserted that the Harris brothers' conduct in freezing Salk out was "oppressive" within the meaning of section 86 of the Business Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.86). Plaintiff thereby requested the entry of a decree liquidating the assets and business of Harris Loan; or, in the alternative, ordering the Harris brothers to vote for and restore Salk to his officership and directorship, and restraining the Harris brothers from interfering with Salk's participation in the management of Harris Loan.

At the conclusion of trial, the court ruled that the exclusion of Salk by the Harris brothers was not a breach of fiduciary duty or oppression, but merely an exercise of their right as majority shareholders to "vote their strength." Moreover, regarding the operation of Harris Loan, participation in it, and payment of income from it, the court held that plaintiff had not proved an oral agreement and, thus, was not entitled to equitable relief. Based on these findings, judgment was thereupon entered in favor of defendants on September 1, 1982. It is the propriety of this judgment which plaintiff now contests on appeal.

I

The threshold issue is whether the trial court erroneously concluded that plaintiff was barred from equitable relief under the doctrine of "unclean hands."

It is a fundamental rule that one seeking equity cannot take advantage of his own wrong or, as otherwise stated, "[h]e who comes into equity must come with clean hands." (See generally 2 Pomeroy, Equity Jurisprudence sec. 397 *et seq.* (5th ed. 1941).) The application of this equitable maxim lies within the sound discretion of the trial court; the doctrine is not concerned so much with the effect of plaintiff's conduct, but with the intent with which the acts were performed. *Regional Transportation Authority v. Burlington Northern Inc.* (1981), 100 Ill. App. 3d 779, 786, 426 N.E.2d 1143.

Traditionally, the "unclean hands" doctrine has not been favored by the courts, for it is not a judicial straightjacket intended to prevent equity from doing complete justice. (*Shadden v. Zimmerlee* (1948), 401 Ill. 118, 127-28, 81 N.E.2d 477; *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 972, 369 N.E.2d 172.) Furthermore, Illinois decisional law provides that the misconduct on the part of a plaintiff which will defeat recovery in a court of equity under this rule must have been fraud or bad faith directed toward the defendant in the very transaction being considered. *Mills v. Susanka* (1946), 394 Ill. 439, 445-46, 68 N.E.2d 904; *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 500-01, 422 N.E.2d 1166, *appeal denied* (1981), 85 Ill. 2d 563.

In the present case, it was argued by defendants at trial that lump sum amounts paid to Salk annually from 1973 through 1977 were, essentially, bill payments to Salk for his services as a consultant to Harris Loan. However, Salk characterized these bills as "shams," admitting that they were prepared after payment had already been made so as to provide Harris Loan's accountants with "back-up" or documentation. By the use of this procedure, plaintiff asserted that Harris Loan was able to deduct the payments to Salk as fees or commissions; and, as a consequence, the company paid less in taxes than it would have had the payments to Salk been made as dividends. The trial court, nonetheless, regarded this sham procedure as "deplorable"; thus, it concluded *sua sponte* that plaintiff was barred from equitable relief under the doctrine of "unclean hands."

■ Defendants concede that Salk's participation in this misconduct was not directed toward any one of them; rather, they urge that Salk's acts were illegal and a violation of public policy. We are of the opinion that it is this concession which proves fatal to defendants' argument for the application of the "unclean hands" rule. For, since plaintiff, through its principal shareholder Salk, has defrauded neither the defendant corporation nor the individual defendants, the "unclean hands" doctrine is clearly inapplicable to the transaction complained of in this litigation. (*Mills v. Susanka* (1946), 394 Ill. 439, 445-46; *Baal v.*

*McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 500-01.) Moreover, pertaining to the sham billing scheme, we do not discern any malicious intent on the part of Salk which would necessitate invocation of the equitable maxim. (*Regional Transportation Authority v. Burlington Northern Inc.* (1981), 100 Ill. App. 3d 779, 786.) Since plaintiff is not guilty of inequitable conduct toward any of the defendants, its hands are as clean as the court can require; as a result, we believe that the trial court erred in concluding that plaintiff was barred from equitable relief under the "unclean hands" rule.[2] In light of our review of the record in the present case, however, we regard this as harmless error.

## II

■ Plaintiff contends that there was an actual agreement between the Harris brothers and Salk, by course of conduct and oral agreement, to the effect that each of them was to be a director and officer of Harris Loan; that each of them was to have a voice in the corporate management; and, that each of them was to receive income from the company in accordance with an agreed-upon formula. This formula, it is argued, involved a calculation representing a fair and reasonable remuneration for the full-time work performed by the Harris brothers each year. Regarding any excess compensation that either of them might receive during the pertinent fiscal year, plaintiff avers that a like amount was to be paid to Salk so as to provide him with an equal return.

Without question, the burden is on the plaintiff to prove by a preponderance of evidence all of the material terms of an alleged contract. (*Lippman v. Harrell* (1976), 39 Ill. App. 3d 308, 311, 349 N.E.2d 511, *appeal denied* (1976), 63 Ill. 2d 557; *Cardinal v. Trendel* (1973), 13 Ill. App. 3d 193, 197, 300 N.E.2d 612.) In considering whether there was an agreement between plaintiff and the Harris brothers, the trial court stated that such an agreement is "either clearly and unmistakeably discernible from their conduct, or it does not exist"; the terms must be "so clear and certain"; and, the parties "cannot expect the Court to find for you a contract that you didn't take the time yourselves to memorialize." Although we do not necessarily agree with the trial court as to the quantum of evidence necessary to prove the existence of the averred shareholder agreement between plaintiff and the Harris brothers, we are nonetheless of the opinion that the correct conclusion was reached.

---

[2]We neither approve nor disapprove the alleged conduct, but merely conclude it does not fall within the "clean hands" doctrine.

For, when testimony is conflicting, as it is here concerning the veracity of the statements made by Salk and the Harris brothers, it is the function of the trier of fact to resolve these conflicts. (*Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 326, 434 N.E.2d 341.) As a result, the judgment of the trial court sitting as trier of fact in this cause—who observed the witnesses, heard the testimony, viewed the exhibits, and made careful and complete findings of fact—will not be disturbed by the reviewing court unless such findings are manifestly against the weight of the evidence. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518; *Thornton v. Rhodus Mobile Homes, Inc.* (1982), 104 Ill. App. 3d 869, 872, 433 N.E.2d 699.) In addition, "[e]ven if the reviewing court disagrees with the trial court, or might have come to a different conclusion, the decision of the trial court will not be reversed if there is evidence to support it." *La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1052, 436 N.E.2d 645.

Regarding the instant action, there is adequate evidence in the record to support the trial court's findings and judgment. The terms of the alleged agreement that plaintiff seeks to enforce are perpetual corporate officership and directorship, as well as a share in the corporate income; however, we agree with the trial court that the evidence appertaining to such an agreement is ambiguous and contradictory. For, the court could not ignore the following facts: (1) that Paul and Ruben Harris had a compensation package with identifiable components, whereas, Salk did not; (2) that Salk was paid as a consultant on bills that he signed and submitted as a consultant; (3) that Salk not only informed the Internal Revenue Service during an audit that he was a consultant, but that he filled out his tax returns in such a manner as to show that the income he derived from Harris Loan was commission income earned as a consultant; and (4) that Salk even admitted "there is no doubt that [his] role [was] one of consulting and advising."

In essence, the trial court heard the testimonial evidence, examined the proffered exhibits, and concluded that "[c]ommon sense tells me that there was never such an agreement." Upon consideration of the record before us, we believe that this conclusion was not manifestly against the weight of the evidence. To hold otherwise would be tantamount to the assertion that a reviewing court is better equipped than a trial court to determine the credibility of witnesses and the weight to be afforded their testimony. Such a fallacy defies reasoned analysis and eviscerates our well-established standard of review.

### III

■ Plaintiff next maintains that apart from the averred agreement between the parties to this lawsuit, the compensation and benefits received by the Harris brothers pursuant to their own determination is violative of their fiduciary duties as directors and majority shareholders of Harris Loan. For, it is urged that they have used their positions within the company to administer the corporate assets for their own personal gain, rather than to manage the business solely in the interest of the corporation and all of its shareholders. We disagree.

The law is uncontroverted that the individuals who control corporations owe fiduciary duties to their corporation and its shareholders. (*Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 278, 166 N.E.2d 793; *Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 761, 444 N.E.2d 549, *appeal denied* (1983), 95 Ill. 2d 28.) The decision of joint adventurers to form and operate as a corporation, rather than as a partnership, does not change the fact that they embarked on a joint enterprise; thus, their mutual duties and obligations are similar to those of partners. (*Tilley v. Shippee* (1958), 12 Ill. 2d 616, 624, 147 N.E.2d 347.) These duties involve exercising the highest degree of honesty and good faith in the dealings and in the handling of business assets, thereby prohibiting enhancement of personal interests at the expense of corporate interests. *Mandell v. Centrum Frontier Corp.* (1980), 86 Ill. App. 3d 437, 450, 407 N.E.2d 821; *Karris v. Water Tower Trust & Savings Bank* (1979), 72 Ill. App. 3d 339, 353, 389 N.E.2d 1359.

We note that the issue of whether compensation is reasonable is a question for the trier of fact; and, that "[g]enerally, unless the majority shareholders and directors are clearly managing the affairs of the corporation dishonestly or the compensation is so unreasonable as to constitute 'waste' or 'spoliation,' courts have not substituted their judgment for that of the directors. [Citation.]" (*Romanik v. Lurie Home Supply Center, Inc.* (1982), 105 Ill. App. 3d 1118, 1127, 435 N.E.2d 712.) In the case at bar, the trial court held that the evidence failed to establish that the salaries received by the Harris brothers were beyond the range of reason; as a result, the court concluded that there was no breach of fiduciary relationship. We find sufficient evidence in the record to support this conclusion.

At trial, the court was made aware of the fact that during the fiscal years 1973 through 1982, the annual increase in the Harris brothers' salaries averaged less than 11%. It was even conceded by Salk that the annual rate of inflation during this same time period was approximately 10%. Further, he could offer no opinion as to what a reasonable

parameter of fixed remuneration would have been. It was disclosed during trial that beginning in 1973 and extending through 1982, the salaries paid to each of the Harris brothers ranged from $25,512 to $62,302. The lower court found this remunerative scale to be reasonable and justified, noting that Paul and Ruben Harris were educated men of business sophistication and intellect who conducted the day-to-day operations of Harris Loan for a period of 10 years.

For this finding to be held contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident. Since the presumption on appeal is that the trial court heard sufficient evidence on which to base its judgment, the appellant has the burden of demonstrating that the record fails to support such a judgment. (*In re Special Education Placement of Walker* (1982), 107 Ill. App. 3d 1053, 1061, 438 N.E.2d 582.) Plaintiff has failed to show that such was the case here; for, considering the evidence on the whole, we do not discern corporate waste or spoliation sufficient to render the finding of reasonable compensation contrary to the manifest weight of the evidence.

## IV

■ Finally, plaintiff contends that the Harris brothers' act of excluding Salk from the management, control and income of Harris Loan constitutes an oppressive freeze-out. It is thus urged that we remand this cause with directions to enter a judgment ordering liquidation of the assets and business of Harris Loan.

Section 86 of the Business Corporation Act provides in pertinent part that: "Circuit courts have full power to liquidate the assets and business of a corporation: (a) In an action by a shareholder when it appears: *** (3) That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent ***." Ill. Rev. Stat. 1979, ch. 32, par. 157.86.

It is well recognized in Illinois that the word "oppressive," as used in this statute, "does not carry an essential inference of imminent disaster; it can contemplate a continuing course of conduct. The word does not necessarily savor of fraud, and the absence of 'mismanagement, or misapplication of assets,' does not prevent a finding that the conduct of the dominant directors or officers has been oppressive." *Gidwitz v. Lanzit Corrugated Box Co.* (1960), 20 Ill. 2d 208, 214-15, 170 N.E.2d 131, citing *Central Standard Life Insurance Co. v. Davis* (1957), 10 Ill. 2d 566, 573-74, 141 N.E.2d 45.

In *Compton v. Paul K. Harding Realty Co.* (1972), 6 Ill. App. 3d 488, 285 N.E.2d 574, the court found an "arbitrary, overbearing and heavy-handed" course of conduct on the part of the corporate presi-

dent, including his failure to call board meetings; his failure to consult with the plaintiff shareholder and officer regarding management of corporate affairs; his imperious attitude when questioned about his salary; and, his dilatory action in response to certain requests made by plaintiffs. The *Compton* court concluded that such conduct justified the trial court's finding of oppression; thus, the order of dissolution was affirmed. *Compton v. Paul K. Harding Realty Co.* (1972), 6 Ill. App. 3d 488, 499.

In *Gray v. Hall* (1973), 10 Ill. App. 3d 1030, 295 N.E.2d 506, we noted that actions which might be oppressive under one set of circumstances will not be oppressive under others, *e.g.*, the payment of large salaries to corporate officers might be justified where a particular corporation has large retained earnings. *Gray v. Hall* (1973), 10 Ill. App. 3d 1030, 1034.

With regard to the instant action, it is undisputed that Harris Loan is a close or closely held corporation. By definition, a close corporation is one in which the stock is held in a few hands, or in a few families, and wherein it is not at all, or only rarely, bought or sold. ·*Galler v. Galler* (1964), 32 Ill. 2d 16, 27, 203 N.E.2d 577; *Wasserman v. Rosengarden* (1980), 84 Ill. App. 3d 713, 716, 406 N.E.2d 131, *appeal denied* (1980), 81 Ill. 2d 600.

Our review of the record in the present case indicates that in 1977, due to a disagreement with respect to the proposed merger of plaintiff and defendant corporations, Salk informed the Harris brothers that he wished to sell plaintiff's shares in Harris Loan. The Harris brothers offered to buy out plaintiff's equity at $35,000, a price equal to the 1977 book value of the shares. Salk declined this offer, however, and refused to give up the stock for a price less than the alleged fair market value of approximately $300,000.

In an attempt to persuade the Harris brothers to buy plaintiff out at the fair market price, Salk informed them that the institution of a lawsuit would have a chilling effect on their bank lines of credit. As a result, the Harris brothers terminated further consulting services by Salk; and, at a special meeting of the Harris Loan shareholders on May 30, 1978, they voted Salk out as a director. The Harris brothers were able to accomplish this by outvoting plaintiff's cumulative voting rights with their preferred shares. These shares were issued in 1973 at Salk's request in exchange for $7,500 of their subordinated debentures, thereby avoiding plaintiff's "pooling of interest" accounting requirement which would otherwise necessitate the filing of consolidated tax returns. Leah Harris, the wife of one of the Harris brothers, was subsequently elected to replace Salk on the Harris Loan Board. On June

26, 1978, Ruben Harris was then elected to the office of corporate secretary, thereby effectively ousting Salk from participation in the business of Harris Loan.

At the conclusion of trial, the court stated: "All that the majority did here is to vote their strength." Thereupon, the court ruled that the evidence did not establish oppression or a breach of fiduciary relationship. We agree.

As we indicated earlier, a reviewing court is not inclined to reverse the decision of a trial court who can, with greater effectuality, determine the credibility of witnesses by hearing their testimony and observing their demeanor. In addition, where the outcome of a case is contingent upon the facts found in the record, we will not disturb the findings and judgment of the trial court in nonjury cases if there is any evidence in the record to support such findings and judgment. *Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, 323, 437 N.E.2d 860, *appeal denied* (1982), 91 Ill. 2d 581; *La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 1052.

Contrary to the claim of plaintiff, we find ample support in this record for the trial court's findings and judgment. For, unlike the situation in *Compton,* there has been no allegation here of failure on the part of the Harris brothers to call policy-making board meetings; nor can we discern a disarray of corporate affairs which would be indicative of an arbitrary course of conduct.

A shareholder in a corporation is entitled to participate in the management according to the amount of his stock. (*Gidwitz v. Lanzit Corrugated Box Co.* (1960), 20 Ill. 2d 208, 215.) However, we must agree with the trial court's ruling that the majority, by merely voting its strength to effectively oust Salk from participation in the business of Harris Loan, did not act oppressively within the meaning of section 86 of the Business Corporation Act (Ill. Rev. Stat. 1979, ch. 32, par. 157.86). Since an opposite conclusion is not clearly evident from our review of the extensive record in the instant case, we are of the opinion that the trial court's findings and judgment are not against the manifest weight of the evidence.

For the reasons set out herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.