(No. 35627.—

Victor E. Gidwitz, Exr., *et al.,* Appellees, *vs.* Lanzit Corrugated Box Co. *et al.,* Appellants.

*Opinion filed September 29, 1960—Rehearing denied Nov. 30, 1960.*

THOMAS C. McCONNELL, and CHARLES R. KAUFMAN, both of Chicago, (VEDDER, PRICE, KAUFMAN & KAMM-HOLZ, and McCONNELL, PASCHEN & CURTIS, of counsel,) for appellants.

MAX SWIREN, and THOMAS R. MULROY, both of Chicago, (RALPH E. DAVIS, WILLIAM P. SUTTER, KENNETH D. PALMER, and HOPKINS, SUTTER, OWEN, MULROY & WENTZ, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This action was brought by certain shareholders of

Lanzit Corrugated Box Co., an Illinois corporation, under subparagraphs (1), (2), and (3) of paragraph (a) of section 86 of the Business Corporation Act of this State (Ill. Rev. Stat. 1955, chap. 32, par. 157.86) on the theory that both the directors and shareholders of this corporation are deadlocked and that the original defendants had committed illegal, oppressive or fraudulent acts.

Answers and counterclaims were filed to this by defendants asking for an accounting and other relief and later an amended complaint was filed to which answers and counterclaims were also filed.

Thereupon this cause was referred to a master, who, after many hearings commencing in January, 1955, and extending over some three years with several thousands of pages of testimony and voluminous exhibits, made his finding recommending the entry of a decree ordering a dismissal of this cause at plaintiffs' costs.

After several hearings on the master's report, the trial court rendered an oral opinion sustaining the master's finding that the complaint be dismissed and that no relief be granted on the counterclaims.

Following that and prior to the entry of the final decree in this cause, a supplemental complaint was filed on March 16, 1959, setting out certain other matters occurring earlier in 1959. It asked (1) for the appointment of a liquidating receiver for the corporation, and (2) for a dissolution of the corporation under subparagraph (1) of paragraph (a) of section 86 of The Business Corporation Act. Ill. Rev. Stat. 1955, chap. 32, par. 157.86.

To this supplemental complaint, answers and affirmative defenses were filed by the several defendants, and on August 17, 1959, without further evidence the trial court entered its final decree confirming the master's report in certain respects and overruling it to the extent inconsistent with the court's finding of facts as follows:

"1. The directors of the Corporation are now, and since

1950 have been deadlocked in the management of the corporate affairs.

"2. The shareholders of the Corporation are now, and since 1950 have been, unable to break the deadlock of the directors in the management of the corporate affairs.

"3. Irreparable injury to the Corporation is threatened by reason of the deadlock of the directors and the shareholders.

"4. The shareholders of the Corporation are deadlocked in voting power and have failed, for a period of ten consecutive annual meeting dates since 1949, to elect successors to directors whose terms have expired or would have expired upon the election of their successors.

"5. The acts of Defendants Joseph, Gerald and Willard have been and are oppressive in that, through the medium of the deadlock among the directors and the stockholders, said Defendants have been in control of the Corporation for the last ten years by reason of Joseph being President and chief executive officer."

The court then stated his conclusions of law as follows:

"1. Plaintiffs have established their right to have the assets and business of the Corporation liquidated pursuant to the provisions of Section 86(a)(1) of the Illinois Business Corporation Act.

"2. Plaintiffs have established their right to have the assets and business of the Corporation liquidated pursuant to the provisions of Section 86(a)(3) of the Illinois Business Corporation Act."

The court thereupon decreed that the assets and business of the corporation be liquidated under paragraphs 8 and E of the amended complaint and section 86(a)(1) and section 86(a)(3) of the Business Corporation Act; appointed a liquidating receiver; retained jurisdiction for certain matters; denied the relief asked in the counterclaim, and dismissed same.

Appeal was then taken to the Appellate Court for the

First District and by order of that court on November 3, 1959, the cause was transferred to this court because the termination of a corporate franchise was involved.

From this voluminous record the undisputed facts appear to be that this is a family corporation, all shares being owned or controlled by the Gidwitz family, so that fifty per cent of the shares are owned by the defendants and the other fifty per cent owned or claimed to be under the control of plaintiffs.

Subparagraphs (1), (2), and (3) of paragraph (a) of section 86 of the Business Corporation Act (Ill. Rev. Stat. 1955, chap. 32, par. 157.86) invoked here, read as follows:

"Courts of equity shall have full power to liquidate the assets and business of a corporation:

"(a) In an action by a shareholder when it is made to appear:

"(1) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

"(2) That the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose term has expired or would have expired upon the election of their successors; or

(3) That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; * * *."

We turn at once to subparagraph (3) of paragraph (a) of section 86, which applies when "the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." There appears to be no claim that the acts of the directors or officers in this case are "illegal" or "fraudulent," but only that the "deadlock" is "oppressive" to the plaintiffs as shareholders because they, as directors, are

precluded thereby from participating at the policy level in the direction and supervision of Joseph Gidwitz's activities as president of the corporation.

Without considering the "trust" question in the voting of certain shares, also presented in the briefs, there appears to be a fifty-fifty division of directors as well as all shares for voting purposes in this case, with one group headed by the president (one of the defendants) and the other by the secretary-treasurer (one of the plaintiffs in this case.)

Our statute pertaining to "officers" (Ill. Rev. Stat. 1955, chap. 32, par. 157.43,) after naming the officers a corporation is to elect, provides as follows: "All officers and agents of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the property and affairs of the corporation as may be provided in the by-laws, or as may be determined by resolution of the board of directors not inconsistent with the by-laws."

The by-laws of this corporation fix the duties of the president of this corporation (omitting matters not here pertinent) as follows: "Unless otherwise provided by resolution of the Board of Directors the President shall be the chief executive officer of the corporation, and when present shall preside at all meetings of the Board of Directors, and all meetings of the shareholders; he shall have power to appoint and discharge employees and agents of the corporation, and to fix their compensation.   *   *   * the President shall, while the Board of Directors is not in session, have the general and active management and control of the business and affairs of the corporation, and shall see that all orders and resolutions of the Board of Directors are carried into effect; he shall have general supervision and direction of the other officers of the corporation, and shall see that their duties are properly performed."

In arguing that the acts of the directors or those in

control of the corporation were "oppressive" to plaintiffs as shareholders, certain specific acts of the president and the other defendants are relied upon in the brief of the plaintiffs to support this charge:

(1) That plaintiffs have been deprived of participation in the management of the corporation although two of them are directors;

(2) That the president, without consulting plaintiffs and without board authorization, organized another corporation, "Custom Made," with Lanzit funds, which corporation lost some $290,000 during a five-year period;

(3) That there is a ten-year deadlock which defendants refuse to break by increasing the number of directors from four to five;

(4) That in 1954 the president hired John Spence at a salary of $32,500 and the promise of a car, as "Managing Officer of the Corporation," but serving (without title) in the capacity of executive vice-president.

(5) That the president made arbitrary deductions from the salary of Victor Gidwitz.

(6) That without board approval the president borrowed $300,000 from the American National Bank in 1951; borrowed $50,000 on two occasions from Rockwell Realty Company of which he was president, and borrowed $50,000, $50,000 and $100,000 from Tribros Investment Company, a partnership of himself and his two brothers, all in the name of Lanzit;

(7) That the president executed a proxy to himself to vote the stock of a Lanzit subsidiary, Chippewa;

(8) That the president failed for ten years to consult with the directors, other than his brother, on corporate policy decisions.

We have held that the word "oppressive" as used in this statute, does not carry an essential inference of imminent disaster; it can contemplate a continuing course of conduct. The word does not necessarily savor of fraud,

and the absence of "mismanagement, or misapplication of assets," does not prevent a finding that the conduct of the dominant directors or officers has been oppressive. It is not synonymous with "illegal" and "fraudulent." *Central Standard Life Ins. Co. v. Davis,* 10 Ill.2d 566.

The essential attribute of a shareholder in a corporation is that he is entitled to participate, according to the amount of his stock, in the selection of the management of the corporation, and he cannot be deprived or deprive himself of that power. (*Colton v. Williams,* 65 Ill. App. 466; *Laughlin v. Johnson,* 230 Ill. App. 25.) Truly the management is controlled by the stockholders acting through their elected directors, and it is contemplated that the corporation is to be controlled by the majority stockholders. (*Levin v. Hunter,* 6 Ill. App. 2d 461.) Nevertheless the minority of stockholders is not to be deprived of the opportunity of exhibiting their corporate desires and directives by the exercise of their right to participate in the election of directors.

In the situation at hand we have neither majority nor minority stockholders—the shares are split between the dissident factions and families. By virtue of his assumption of the prime office of president at a time of mutual agreement between the owners of all of the shares, and the support of his family with one half of the shares, Joseph Gidwitz is able to manage, operate, and control Lanzit almost as a sole proprietorship, while paying technical respect to the existing corporate structure and the laws relating to corporations. The principles governing the existence and conduct of corporate structures must apply to this stockholding situation and to this corporation just as they apply to a corporation having true majority and minority stockholding.

It appears from the record that for ten years no annual meeting of shareholders has been held at which the shareholders were called upon or permitted to vote for directors

of the corporation. This indicates a deprivation of shareholders' rights. Directors are to be elected at "annual" meetings as provided by section 26 of the Business Corporation Act. (Ill. Rev. Stat. 1959, chap. 32, par. 157.26.) A special meeting of shareholders was held on February 16, 1959, pursuant to the call of Victor and Carrie Gidwitz at which they proposed that the number of directors be increased to five. The proposal was ruled out of order by Joseph Gidwitz.

Prior to this special shareholders' meeting, the plaintiffs also called a directors' meeting on February 13, 1959. At the directors' meeting seven resolutions were presented, including an amendment to the bylaws to increase the board of directors from four to five directors. On each resolution the vote was evenly split between the directors from the two families.

At the shareholders' meeting like resolutions were presented and ruled out of order by Joseph as president and presiding officer—but Joseph and his family shareholders stated that they would have voted against plaintiffs' proposals. In each instance the shareholders and directors from one family voted one way and those from the other family voted just the opposite or so indicated their intention.

From these actions it is readily apparent that the two families, each owning and voting one half of the stock, are irreconcilably split in all matters relating to the management of the corporation—and that the family of Joseph Gidwitz is determined to completely control the operation and management of the corporation by virtue of his corporate office as president, regardless of the views of the other one-half of the corporate shareholders or directors.

While during the past ten years there were a few meetings of directors called and held, it appears that at none of them were matters of business or corporate policy presented to the board for action, discussion or approval.

Defendants have asserted that 4,500 of the shares which

Victor Gidwitz has voted from time to time are shares of the Carrie Gidwitz Trust, and that he was not authorized to vote these shares by reason of breach of fiduciary duty. By the instrument creating the trust, Victor Gidwitz and certain other persons were to act as cotrustees and were to act by majority vote. Some of these cotrustees never acted as trustees, and each of them has resigned as trustee leaving only Victor as trustee. The surviving or remaining trustees are empowered to act until all of them are dead, resigned or unable to act as trustee. We find no instance in which Victor has so acted as to achieve personal benefit to himself. He is the sole remaining trustee of those named by the trust instrument, and as such is empowered to act alone. He has not been removed as trustee. He is therefore, on this record, properly empowered to and did properly act in voting the trust stock. Moreover, it appears from the record that his right to so vote the stock was never challenged or objected to at the time of any corporation vote.

The bylaws of the corporation require that the president shall submit to the board of directors and to the shareholders, when so requested, a full report of the operations of the corporation, and shall from time to time report to the board of directors all matters within his knowledge which the best interests of the corporation require to be brought to their notice. This Joseph avoided by either not having shareholders' or board-of-directors' meetings, or choosing to find nothing, that could affect his control or management, which the best interests of the corporation required be called to the attention of the directors or shareholders.

It additionally appears from the by-laws of this corporation that Joseph Gidwitz, as president, had authority to appoint and discharge employees and agents, and to fix their compensation, and had general and active management and control of the corporate business and affairs.

If John Spence was in fact an employee of the corporation, then without doubt the president was authorized to appoint him, although objections were registered to his appointment by these plaintiffs. The record discloses, however, that his salary of $32,000 annually was more than twice that of any other "employee," and compared favorably with the salaries of officers of the corporation. In addition his duties were not those of a mere employee but were such duties as were generally assigned to and performed by an officer. The terms of his employment provided that he was to be furnished an automobile. No other employee of the corporation was provided with an automobile, and only officers were accorded this privilege. The hiring and fixing of the salary and terms of employment of John Spence, by Joseph Gidwitz as president, violated the spirit if not the express intent of the bylaws.

Section 10(g) of article III of the by-laws of this corporation provided that the powers of the directors were "To appoint or employ and remove, suspend or discharge the registered agent, such subordinate officers, agents, factors and employees of the corporation as the Board may deem necessary from time to time, and to determine and fix their duties; and to fix, increase and decrease their remuneration as and when so deemed advisable by the Board." Other provisions in the bylaws only permitted the president to appoint, discharge and fix the compensation of "employees and agents" of the corporation.

In 1954, Joseph, as president of Lanzit, gave salary increases to two assistant secretaries of the company without authorization from or approval by the board of directors. Assistant secretaries of the corporation are corporate officers as provided by section 1 of article IV of the bylaws.

Joseph likewise provided for charges against Victor's salary as secretary and treasurer, and made deductions from Victor's salary without authority or approval from the board of directors.

A director or officer of a corporation is forbidden to administer the affairs of the corporation for his private emolument, and cannot deal with the corporate property for his own benefit, or directly or indirectly derive any personal profit or advantage by reason of his position, distinct from the shareholders. (*Goldberg* v. *Ball,* 305 Ill. App. 273; 13 I.L.P. 482, Corporations, sec. 326.) Joseph Gidwitz was president of Rockwell Realty in which all of the shareholders of Lanzit were also owners, and, with his two brothers, was a partner in Tribros Investment Company. Joseph negotiated five interest-bearing loans with these two companies without consulting the board of directors. By resolution of the board of directors of Lanzit held July 6, 1944, Michael Gidwitz, Joseph L. Gidwitz, Jacob Gidwitz, and Victor Gidwitz were authorized to borrow money for and on behalf of and in the name of this corporation in such amounts and for such time and interest as any of them shall see fit, upon the signature of any one of them. That resolution, however, does not authorize the borrowing of moneys from lending agencies in which the signer has a financial interest. Joseph, in effect, borrowed from himself and realized a profit thereon.

It further appears that in no one of said loans, nor in the loan from the American National Bank, did Joseph seek the advice of, consult with or inform the board of directors.

Joseph executed to himself a proxy to vote the Chippewa stock owned by Lanzit without consulting the board of directors, and without knowing the Lanzit bylaw provisions in respect to the execution of proxies.

Again without consultation with or authorization from the board of directors, Joseph, as president of Lanzit, organized one of Lanzit's departments into a separate corporation which, in the course of five years, sustained losses alleged to be as much as $290,000. Joseph testified that he never consulted the directors of Lanzit at any time as to how the separate corporation's stock, known as "Custom

Made Container Company," should be voted, or who its directors or officers should be.

The record in addition supports numerous acts of hostility toward and deprivation of the rights of Victor Gidwitz and Carrie Gidwitz as stockholders.

It is clear that Joseph Gidwitz has used his position as president of a closely held corporation, split fifty-fifty in stock ownership between his family and the family of plaintiffs, to completely control and manage the corporation without majority stock support. The plaintiffs, as stockholders, have been effectively deprived of their rights and privileges. The record indicates a continuing course of conduct on the part of Joseph Gidwitz and the defendants to sieze and hold the corporate entity to the complete exclusion of plaintiffs from their lawful right to participate in the management of Lanzit. Moreover, plaintiffs have even been deprived of their effective power as directors and officers of Lanzit.

Since 1948 the shareholders of the corporation have received no dividends, and Joseph, as president, has not seen fit to present the matter of payment of dividends to the board of directors.

The record exhibits a continuing course of oppressive conduct for which the future holds little or no hope of abatement. A continuing course of refusal of the controlling group to agree with the plaintiffs on any issue is evidenced. Moreover, Joseph has acted in an arbitrary and high-handed manner as president of the corporation—refusing to follow the dictates or direction of the corporate bylaws, or to subordinate his actions to the advice or control of the board of directors. The rights to which plaintiffs as officers, directors and shareholders of Lanzit are entitled have been abused and denied. It is not necessary that fraud, illegality or even loss be shown to exhibit oppression of plaintiffs and their interest in the corporation. Corporate dissolution is a drastic remedy that must not

be lightly invoked. (*Central Standard Life Ins. Co.* v. *Davis,* 10 Ill.2d 566.) Nevertheless, when oppression is positively shown, the oppressed are entitled to the protection of the law.

The improper acts of Joseph, as president of Lanzit, the continuing course of conduct followed by the defendants through their president, the lack of majority control, and the denial to plaintiffs of their corporate rights and privileges, exhibit oppression in this particular situation.

The cumulative effects of these many acts and incidents, and their indicated continuing nature, combine to constitute that oppression which entitles plaintiffs to the only remedy provided by law—dissolution.

In view of these conclusions it is unnecessary to discuss the applicability of subparagraphs (1) and (2) of paragraph (a) of section 86.

The decree of the superior court of Cook County is, therefore, affirmed.          *Decree affirmed.*