**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240444-U

Order filed March 12, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| ANNE M. DAVIS, Individually as Trustee of The Patricia M. Scheck Trust, under agreement dated July 30, 2023, and derivatively as shareholder of the Scheck Lumber Company, Inc., an Illinois Corporation, | ) ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0444 Circuit No. 23-CH-48 |
| | ) ) | |
| TIMOTHY SCHECK, KEVIN SCHECK, and SCHECK LUMBER COMPANY INC., an Illinois Corporation, | ) ) ) ) | Honorable Robert G. Gibson, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Bertani concurred in the judgment.

_____

ORDER

¶ 1    Held:    The trial court did not err in granting the defendants' motion to dismiss, with prejudice. Plaintiff failed to adequately plead sufficient facts to support her claims of breach of fiduciary duty and for oppressive conduct by the controlling shareholders under section 12.56 of the Business Corporation Act (805 ILCS 5/12.56 (West 2022)).

¶ 2    Scheck Lumber Company (SLC) is a closely held family business. Anne Davis owns 49%, while her brothers, Tim and Kevin Scheck, collectively own 51%. She sued them, alleging that they acted together to prevent her from receiving any economic return from her minority ownership in SLC. Anne further alleged that Tim and Kevin paid themselves excessive compensation that prevented her from receiving any dividend from SLC's revenue other than for personal taxes and that her brothers were acting to freeze her out of SLC's operations. The trial court dismissed Anne's case with prejudice, finding that she failed to state a claim. Anne appealed, and we affirm the dismissal.

¶ 3                                    I. BACKGROUND

¶ 4    SLC is a family-owned lumber business that was incorporated in 1986 by Albert P. Scheck and has been owned and controlled by the Scheck family ever since. Albert was Anne, Tim, and Kevin's father, and Patricia Scheck was their mother. Albert died in 1990, and his 100% ownership in the company then passed to his wife, Patricia. Patricia transferred 51% of the ownership of SLC to Richard Scheck, Albert's brother, to manage and operate the business.

¶ 5    Tim and Kevin began working full-time for SLC no later than 1997 and became officers and directors of SLC that year. In 2002, Patricia effected a stock purchase arrangement of Richard's 51% interest in SLC that resulted in 25.5% of SLC being sold to Tim, and 25.5% of SLC being sold to Kevin, while Patricia maintained her 49% ownership of SLC. Upon completion of the stock purchase arrangement in 2002, there was no majority owner of SLC, with Patricia, Tim and Kevin each owning a separate minority interest. Patricia, Tim and Kevin were the only directors of SLC beginning in 2002.

¶ 6    In August 2003, Patricia transferred her 49% interest in SLC into the Patricia M. Scheck Trust, an *inter vivos* revocable trust that named her as trustee and beneficiary, and Anne as

successor trustee. The Trust has retained its 49% ownership interest in SLC from 2003 to the present. After Patricia died on October 22, 2009, Anne was appointed as successor trustee of the Trust and is the sole beneficiary of the 49% share of SLC stock owned by the Trust.

¶ 7    In July 2009, Patricia filed a lawsuit against Tim and Kevin in the circuit court of Cook County (Cook County Lawsuit). After Patricia's death, Anne continued prosecution of the suit as successor trustee of the Trust. Anne's suit ultimately alleged that Tim and Kevin had acted together to breach fiduciary duties owed SLC by paying themselves excessive compensation and that Tim and Kevin had violated the Business Corporation Act (BCA) because the excessive compensation constituted misapplication of funds and waste that harmed SLC. She sought their removal as officers and directors of SLC under section 8.35(b) of the BCA (805 ILCS 5/8.35(b) (West 2022)).

¶ 8    The Cook County Lawsuit took nearly seven years to finish and was resolved after a full bench trial. The trial court dismissed the breach of fiduciary duty claims by a directed verdict and entered a lengthy written judgment on May 16, 2013, on the remaining BCA removal claim. Judgment was entered in favor of Tim and Kevin, with the trial court declining to remove them based on excessive compensation. The court found that: (1) their compensation from 2002 to 2007 had been expressly approved by Patricia by executing unanimous written consents; (2) a compensation agreement for Tim and Kevin existed and was known to Patricia, compensation payments were shown in financials, and the compensation was ratified by Patricia as there had been no objection; (3) Tim and Kevin's compensation was not excessive for years 2008 to 2012; and (4) Tim and Kevin's compensation had been approved by following corporate formalities, did not violate public policy, did not violate SLC's bylaws, and the compensation was not disproportionate to SLC's revenue and profits.

3

¶ 9 The trial judge in the Cook County Lawsuit also found that Tim and Kevin did not grossly abuse their power in approving their compensation even over minority shareholder objections from 2008 to 2012. Further, Tim and Kevin did not shut Anne out of corporate decisions by preventing her from being a director, failing to notify her of or improperly conducting shareholder meetings, or by any other unauthorized acts.

¶ 10 Following the resolution of the Cook County Lawsuit, the parties have continued their ongoing disagreement on nearly all, or similar, issues. Since May 2013, Tim and Kevin have voted their 51% of the shares the same on nearly all issues of corporate governance for SLC, including their compensation, and have voted against or failed to second any motions on issues raised by Anne. Tim and Kevin have voted approval of their compensation, and Anne has objected. Dividend distributions annually covered each shareholder's individual pass-through tax liability.

¶ 11 In March 2023, Anne filed her original complaint in the circuit court of Du Page County against Tim and Kevin in the case giving rise to this appeal. The original complaint asserted individual and derivative claims for breach of fiduciary duty, constructive fraud, and minority shareholder oppression under section 12.56 of the BCA (805 ILCS 5/12.56 (West 2022)). All of Anne's claims were based on allegations that Tim and Kevin had voted together to oppress her by approving excessive compensation for themselves, constituting misapplication of corporate assets and waste, preventing her from realizing any return on her ownership in SLC. The complaint specifically cited to SLC's financial statements from 2016 to 2021 to support its allegations on compensation and earnings, and alleged that all of SLC's after-tax profits had been paid to Tim and Kevin. Tim and Kevin moved to dismiss Anne's complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2022)). The circuit court granted Tim and Kevin's motion to dismiss on section 2-615 grounds and permitted Anne to replead.

4

¶ 12 In September 2023, Anne filed her amended complaint, repleading her claims for breach of fiduciary duty, constructive fraud, and minority shareholder oppression pursuant to section 12.56 of the BCA. The amended complaint again cited to the SLC 2016 to 2021 financial statements and again alleged all after-tax profits were paid to Tim and Kevin. Tim and Kevin moved to dismiss the amended complaint pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2022)).

¶ 13 In February 2024, the circuit court granted Tim and Kevin's motion to dismiss the amended complaint pursuant to section 2-615 and again granted Anne leave to replead. In its ruling, the court found that the amended complaint repeatedly referenced and relied on the SLC financial statements for allegations concerning compensation without attaching them as an exhibit. The court also stated that Anne's allegations of SLC's annual profits being "zeroed out" by Tim and Kevin's compensation was directly contradicted by the financial statements. The financial statements instead showed that substantial amounts of profits were retained each year by SLC as retained earnings.

¶ 14 The court further found that the amended complaint did not contain sufficient non-conclusory facts to support the claim that the payment of compensation was made "in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder, and the corporation's assets are being misapplied or wasted." The court explained what fact pleading might be sufficient to support Anne's claim:

"And when we look at on what basis plaintiff is asserting that this compensation is excessive, excessive compensation, it must be beyond the range of reason. Factors are: The officers' ability, the quantity and quality of services provided, the time devoted to the company, the difficulties involved and responsibilities assumed in the officers' work, the

5

successes achieved, profitability due to the officers' efforts, the company's financial condition, and the compensation paid for comparable work by similar companies. I don't see that the complaint addresses any of these factors that would constitute facts where the conclusion that the compensation is unreasonable or excessive so as to constitute waste or spoliation, I don't see that that's been pled here. I think it's -- it is it is insufficient."

¶ 15    Anne filed her second amended complaint on March 5, 2024. The second amended complaint removed her previously pled constructive fraud claim, leaving only individual and derivative claims for breach of fiduciary duty and minority shareholder oppression under section 12.56 of the BCA. She omitted all references to the SLC financial statements while keeping the same allegations regarding the compensation numbers. The second amended complaint also removed explicit statements that Tim and Kevin had "zeroed out" all of SLC's profits each year by paying it all to themselves as compensation.

¶ 16    The second amended complaint repeated allegations from the original and first amended complaints that Tim and Kevin's compensation was "significantly greater than the value of services they provided to the family business" and "were not correlated to SLC's profitability and not based on any objective performance criteria or any established company parameters." Further, "the company's earnings have not risen to such a level so as to justify the excessive sums of officer compensation" and so "continuously awarding themselves unreasonable and excessive bonuses constitutes waste" and the compensation paid was "far in excess of the reasonable value of the services they allegedly provided to SLC constituting a misapplication of SLC's corporate assets" and "a waste of SLC's corporate assets."

¶ 17    In April 2024, Tim and Kevin moved to dismiss Anne's second amended complaint pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2022)). At the hearing on the motion to

6

dismiss, the court announced it was granting the motion to dismiss under section 2-615 and stated that "the court should liberally allow leave to amend" but that "this is the third attempt" and asked Anne's counsel, "is there any [point] in giving leave to file a third amended complaint here? Is there anything else you could allege that hasn't already been alleged?" Anne's counsel responded, "I don't believe so, your honor." On June 6, 2024, the circuit court entered an order dismissing Anne's second amended complaint with prejudice pursuant to section 2-615. The court did not reach the section 2-619 motion.

¶ 18                                    II. ANALYSIS

¶ 19        The issue in this appeal is whether the trial court erred in dismissing Anne's second amended complaint with prejudice under section 2-615 (735 ILCS 5/2-615 (West 2022)) for failing to adequately plead enough non-conclusory facts to state a claim for breach of fiduciary duty, or oppression, under section 12.56 of the BCA (805 ILCS 5/12.56 (West 2022)), based on allegations of excessive compensation.

¶ 20        A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint, and an order dismissing a complaint is reviewed *de novo*. *Neade v. Portes*, 193 Ill. 2d 433, 439 (2009). In determining the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts and construe the allegations in the complaint in the light most favorable to the plaintiff. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). All facts apparent from the face of the pleadings, including exhibits, must be considered. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall*, 222 Ill. 2d at 429-30. Illinois is a fact-pleading jurisdiction, and, while the plaintiff is not required to set forth all of their evidence in the complaint,

the plaintiff must allege facts sufficient to state a viable cause of action and may not simply allege fact conclusions. *Id*.

¶ 21	Only facts apparent in the pleading, documents attached to the complaint, matters on which the court may take judicial notice, and judicial admissions may be considered in ruling on a section 2-615 motion to dismiss. *Northwestern Illinois Area Agency on Aging v Basta*, 2022 IL App (2d) 210234, ¶ 31. Documents attached to a motion to dismiss may also be considered where the plaintiff put their contents at issue but did not attach them to the complaint. *Id*. Where allegations in the complaint conflict with facts in an exhibit, the exhibit controls, and the allegations will not be taken as true in evaluating the sufficiency of the complaint. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 430-31 (2004). A reviewing court may take judicial notice of prior litigation between parties. *Sundance Homes, Inc. v. County of Du Page,* 195 Ill. 2d 257, 275 (2001). Further, a court may take judicial notice of other proceedings in other courts, particularly if those proceedings involved the same parties and decided related or similar issues. *People v. Davis*, 65 Ill. 2d 157, 164-65 (1976).

¶ 22	Anne's dismissed second amended complaint contained only two counts: breach of fiduciary duty and relief from oppressive conduct under section 12.56 of the BCA (805 ILCS 5/12.56 (West 2022)). Both of those claims rely on the notion that Tim and Kevin paid themselves excessive salaries and that they froze Anne out of decision-making capabilities as a shareholder.

¶ 23	A. Excessive Compensation

¶ 24	Illinois courts have described the kind of facts needed to justify an excessive contribution. "The factors to be considered in making such determinations include, *inter alia*: the employee's ability, quantity and quality of services he renders, the time he devotes to the company, the difficulties involved and responsibilities assumed in his work, the success he has achieved,

8

profitability due to his efforts, the company's financial condition, and the compensation paid for comparable work by similar companies." *Romanik v. Lurie Home Supply Center, Inc.*, 105 Ill. App. 3d 1118, 1126 (1982). Pleading allegations of these or similar facts does not require that the plaintiff prove their case in their pleadings but rather satisfies the requirement that a plaintiff allege facts rather than conclusory statements.

¶ 25    Anne's allegations are replete with descriptions of the compensation as excessive, exorbitant, greater than the value of services provided, substantial, and unreasonable. However, the allegation that something is excessive, exorbitant, or unreasonable is subjective and requires pleading facts showing *why* the compensation is excessive. For example, the allegations relate to the years 2016 to 2021, but there are no allegations as to specific amounts paid out in any other years. It also does not plead any amounts of revenue, expenses, or profits for SLC for any year. There are no allegations that there is an agreement on compensation between SLC and Tim and Kevin nor that there are any corporate guidelines on compensation for SLC.

¶ 26    Anne was informed of the trial court's belief that additional facts such as those found in the *Romanik* case needed to be pled. Stripped of the conclusory descriptions of the compensation paid, there are no well-pled facts that support the allegation that the compensation was excessive or unreasonable. Further, Anne's brief described Tim and Kevin as key employees who had worked at SLC as officers for many years, that SLC was profitable, and that their compensation had been paid only after a review of SLC's net profits annually.

¶ 27    The second amended complaint contains allegations that additional profits beyond those used to pay Tim and Kevin's salaries were paid to them to "misappropriate the Company's profits." In her brief, Anne argues that Tim and Kevin had appropriated "all of the profits of SLC" by the payment of compensation to themselves. The financials, however, show that for each of the years

9

from 2016 to 2021, SLC had profits in amounts above the amounts paid to Tim and Kevin that were shown as retained earnings and that the retained earnings had grown each year of those financials.

¶ 28     Anne relies heavily on *Kovac v. Barron*, 2014 IL App (2d) 121100, to support her argument that she need only plead excessive compensation with no further fact pleading to support that assertion. *Kovac* does not help her. *Kovac* did not involve a decision on a pleading but, instead, upheld a full evidentiary trial judgment. That case involved concealed compensation that had been paid to the defendant sufficient to support the finding that the defendant had acted "in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder." *Id*. ¶ 71. Specifically, the defendant was found to have fraudulently hidden the compensation payments from petitioner and not just to have been excessively compensated. *Id*. ¶ 65. In contrast, here, Anne has made no adequate allegations of fraud or fraudulent concealment, that Tim and Kevin failed to disclose their compensation to her in the SLC financials, or that they failed to follow corporate formalities in approving the compensation. Further, in *Kovac*, the facts at trial proved that the defendants had been paid millions for part-time and clerical work over years. *Id*. ¶ 65. Anne has made no such allegations.

¶ 29     Anne also argues that *Jaffe Commercial Finance Co. v Harris* holds that an allegation of excessive compensation alone is sufficient to state a claim for breach of fiduciary duty. *Jaffe Commercial Finance Co. v Harris,* 119 Ill. App. 3d 136 (1983). That was not the holding in *Jaffe*. *Jaffe* was decided after a trial and so does not speak directly to the appropriate pleading of a claim based on excessive compensation. *Id*. at 143. *Jaffe* did hold, however, that the courts will not second-guess compensation decisions by directors unless they are made dishonestly, or the compensation is so unreasonable as to constitute waste or spoliation. *Id*. (citing *Romanik*, 105 Ill.

10

App. 3d at 1126–27). Anne did not plead that Tim and Kevin acted dishonestly nor did she plead any facts supporting an assertion that the compensation wasted SLC's assets as contemplated by the BCA.

¶ 30                                    B. Shareholder Oppression

¶ 31        Count II of Anne's second amended complaint asserted claims under section 12.56 of the BCA, which states in relevant part:

> "(a) In an action by a shareholder in a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association, the Circuit Court may order one or more of the remedies listed in subsection (b) if it is established that:
>
> ***
>
> > (3) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder whether in his or her capacity as a shareholder, director, or officer; or
> >
> > (4) The corporation assets are being misapplied or wasted." 815 ILCS 5/12.56 (West 2022).

¶ 32        Anne has alleged that Tim and Kevin have oppressed her in two ways. First, by paying themselves excessive compensation, which we have already discussed. Second, she claims they have acted together to freeze her out of corporate decisions on dividends and compensation. Oppression under the BCA does not necessarily require illegal or fraudulent acts nor that the oppressive conduct has caused the business to be in immediate danger of failure. *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill. 2d 208, 214-15 (1960).

11

¶ 33 Oppression was found in *Gidwitz* where two 50% ownership groups had been deadlocked for years, but, nonetheless, the president and shareholder of the business made decisions for the business without approval of most of the directors, depriving the other equal ownership group of meaningful participation in the governance of the company. *Id*. at 220. The court emphasized that a shareholder must be allowed to participate in the management of the business according to the amount of ownership and to participate in the election of directors. *Id.* at 215. No shareholder meetings were held for ten years, meetings that were held did not discuss corporate policy, business bylaws were violated by not presenting annual reports on operations, and the president engaged in transactions that benefitted himself without a majority of the directors' approval. *Id*. at 215-17.

¶ 34 More recent cases finding oppression (or recognizing the adequacy of oppression allegations) have similarly focused on the lack of access of the minority shareholder to become a director, participate in director meetings, and obtain information on the business. See, *e.g.*, *Compton v. Paul K. Harding Realty Co.*, 6 Ill. App. 3d 488, 499 (1972) (oppression where failure to call for board meetings or respond promptly to information requests); *Hager-Freeman v. Spircoff*, 229 Ill. App. 3d 262, 276-77 (1992) (vacated dismissal of oppression in light of well-pled claims of no shareholder meetings for three years, forged records, hidden business information, secret sale of shares to obtain majority control).

¶ 35 The second amended complaint does not plead that Anne has been denied the ability to be a director, that director's meetings have not been held as required, that notice of the meetings was not made, or that any meetings have not been conducted as required by the BCA or SLC bylaws. It does not plead that SLC has bylaws on compensation or dividends that Tim and Kevin have violated. It does not plead that any shareholder agreement exists concerning her shares. It does not plead that Tim and Kevin have failed to provide SLC financial information, although it does plead

12

that Anne did not receive notice of the information "in advance" to allow her an "advanced opportunity to object." It also does not plead that Anne was unable to object to Tim and Kevin's compensation and SLC's dividend policies.

¶ 36     Anne has pled that she was oppressed only because she was "frozen out" of changing the decision of a majority of SLC's directors, Tim and Kevin, to pay themselves employee compensation and not pay dividends above those needed to cover pass-through individual taxes. Anne has pled that she has "consistently and repeatedly objected" to the payment of compensation and so was not "frozen out" of making her objection but rather that her objection was not successful. However, the payment of compensation and dividends is a business management decision made by the business's directors that is not normally reviewed by a court absent any other oppressive acts. *Polikoff v. Dole & Clark Building Corp.*, 37 Ill. App. 2d 29, 38 (1962) (complaint dismissed when allegations were only on business operations and did not sufficiently plead oppression or misapplication of assets).

¶ 37     Anne is only entitled to participate in the management of SLC as a shareholder in proportion to her ownership of stock. *Gidwitz*, 20 Ill. 2d at 215. Management of a business is controlled by a majority of its shareholders unless the minority is denied the right to participate in selecting directors or having those directors heard at meetings. *Id*. A majority exercising its voting power does not by itself constitute a freeze out showing oppression. *Jaffe*, 119 Ill. App. 3d at 146. For example, it is not necessarily a freeze out to have a minority shareholder removed as a director as long as all corporate formalities are observed, director meetings are properly held, and there are no arbitrary acts of mismanagement. *Id*. at 146. A minority shareholder pleading that they were not allowed to participate in business management is not adequate to plead a freeze out. *Elleby v. Forest Alarm Service, Inc*., 2020 IL App (1st) 191597, ¶¶ 46-48.

¶ 38     Anne did not plead sufficient non-conclusory facts related to SLC to support her claim of oppression. She pled only amounts of compensation paid for a few years and a few conclusory statements that SLC did not pay dividends because of the compensation paid. In addition, she failed to plead any specific facts related to SLC's overall financial picture, attach SLC financials, or make any specific factual allegations on SLC's revenues, profits, retained earnings, or ability to pay dividends. Without more, we cannot find the existence of shareholder oppression.

¶ 39                                III. CONCLUSION

¶ 40     Because we conclude that Anne failed to establish that Kevin and Tim (1) compensated themselves excessively and (2) froze her out of exercising her rights as a shareholder, we must likewise conclude that the circuit court properly dismissed the second amended complaint on section 2-615 grounds. Specifically, without establishing her compensation and freeze-out theories, she cannot allege a breach of fiduciary duty, nor damages for breach of fiduciary duty, under Count I. Likewise, her defective compensation and freeze-out arguments cause us to conclude that Count II's BCA claim also fails. And, because she has had multiple opportunities to state a claim and acknowledged to the trial court that she can offer nothing else by way of facts to allege, we find no abuse of discretion in the trial court's decision that the dismissal be made with prejudice.

¶ 41     For all of the reasons stated above, the judgment of the circuit court of Du Page County is affirmed.

¶ 42     Affirmed.